Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____ :
ANTHONY MASSEY,                     :
                                    :     **Civil Action No. 13-3439 (ES)**
             **Petitioner,**        :
                                    :
      v.                            :           **OPINION**
                                    :
CHARLES W. WARREN, JR., et al.,     :
                                    :
             **Respondents.**       :
_____ :

SALAS, DISTRICT JUDGE

## I.    INTRODUCTION

Petitioner Anthony Massey ("Petitioner") is a state prisoner proceeding with a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (D.E. No. 1). Following an order to answer (D.E. No. 8), Respondents filed a response to the Petition (D.E. No. 14), and Petitioner filed a reply (D.E. Nos. 23 & 33). For the reasons stated below, the Court DENIES the Petition and declines to issue a certificate of appealability.

## II.    FACTUAL BACKGROUND

 This case arises out of a sexual assault and burglary that took place on July 22, 1998, in the victim's apartment in North Bergen. J.L.,[1] the victim, resided there with her two-year-old son, B.L. At approximately 2:00 a.m., J.L. was awakened by "a yell." When she opened her eyes, a man, later identified by her as Massey, was next to her and telling her not to yell. Massey sexually assaulted her, awakening B.L. Petitioner then slapped the child, knocking him off the bed. After

_____

[1]       Given that the crimes at issue in this case involve sexual assault, this Opinion refers to the victim by initials rather than full name, to shield the victim's identity.

the assault, Petitioner demanded money. When J.L. turned on the light to look for money, she saw the face of Petitioner, who had performed some work in her apartment when she first moved there. Petitioner continued the assault and then took thirty or forty dollars, finally leaving her apartment at approximately 3:40 a.m. (D.E. No. 1-7 at 2-3).

Massey was charged in Hudson County with first-degree aggravated sexual assault; second-degree burglary; second-degree sexual assault; third-degree aggravated criminal sexual contact; fourth-degree criminal sexual contact; third-degree terroristic threats; third-degree criminal restraint; third-degree aggravated assault; fourth-degree child abuse; third-degree endangering the welfare of a child; third-degree possession of a weapon, a knife with a sharpened edge, for an unlawful purpose; and first-degree armed robbery. (*Id*. at 3).

## III. <u>**PROCEDURAL HISTORY**</u>

Following a pretrial hearing, the trial judge denied Petitioner's motion to suppress the statements he gave to the investigating police officers, in which he denied having any sexual contact with J.L. The case then went to trial before a jury. (*Id*. at 3-4).

Petitioner testified at trial. Although he had denied any involvement in the incident when arrested, his trial testimony was that he had consensual sexual relations with J.L. He claimed that J.L. was concerned that her former husband, who sometimes lived with her, would find out about their sexual activity and rushed him out of the apartment. He claimed that he saw a Hispanic male in the area when he left the apartment building. (*Id*. at 4).

The trial judge dismissed the child abuse and endangering charges at the conclusion of the evidence. The jury found Massey not guilty of the aggravated assault charge, but convicted him on all other counts. (*Id*.).

At sentencing, the trial judge merged the sexual assault, aggravated criminal sexual contact, and criminal sexual contact convictions into the first-degree aggravated sexual assault conviction, and sentenced Massey to a twenty-year term of imprisonment, with an eighty-five percent parole disqualifier pursuant to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2. The judge imposed a concurrent ten-year period of imprisonment, with a NERA eighty-five percent parole disqualifier, on the second-degree armed burglary conviction, and a concurrent five-year term, with a two and one-half year parole disqualifier, on the third-degree criminal restraint conviction. (*Id*. at 4-5).

The trial judge merged the terroristic threats and weapon convictions into the first-degree armed robbery conviction, and sentenced Massey to a fifteen-year term of imprisonment, with a NERA eighty-five percent parole disqualifier, to run consecutive to the other sentences. Consequently, the aggregate term of imprisonment was thirty-five years with an eighty-five percent term of parole ineligibility. Applicable mandatory fines, penalties, and a period of parole supervision were also imposed. (*Id*. at 5).

Petitioner directly appealed his sentence, raising the following issues: his statements to police should have been suppressed because his waiver of *Miranda* rights prior to interrogation was insufficient; failure to instruct the jury on the law of prior inconsistent statements violated his Fourteenth Amendment Due Process rights; the State violated Petitioner's right to a fair and impartial jury via introduction of extraneous matters at trial that inflamed the jury; the prosecution's comment on post-arrest silence violated Petitioner's Fifth Amendment privilege against self-incrimination; jury instructions on aggravated sexual assault and robbery violated Petitioner's Fourteenth Amendment Due Process rights; and his sentence was excessive (collectively referred to as "Direct Appeal Issues"). (D.E. No. 1-4 at 9-11).

On October 15, 2003, the Appellate Division affirmed Petitioner's conviction. (D.E. No. 1-4 ("*Massey I*")). On February 13, 2004, the Supreme Court of New Jersey denied Petitioner's petition for certification. (D.E. No. 16-4).

In his March 2004 petition for post-conviction relief ("PCR"), Petitioner argued his trial counsel was ineffective for: (1) failing to call as a witness Martin Laderman ("Laderman"), the apartment manager, whom Massey contends would have testified that J.L.'s former husband sometimes lived at the apartment (D.E. No. 1-6 at 10-12); (2) entering into a stipulation regarding certain DNA evidence and hospital records of the victim's son, B.L. (*id*. at 12-14); (3) the manner in which counsel handled questions of the jury during deliberations; and (4) failing to make a motion for judgment of acquittal. (*Id*. at 14) (collectively referred to as "PCR Issues").

The PCR judge, who had presided at the trial, denied Petitioner's request for an evidentiary hearing and denied PCR, stating at the October 19, 2006 PCR hearing:

> [The] Court has received and reviewed the 119 page Brief submitted by the Petitioner pro se, as well as the 60 page Brief submitted by his Counsel … At the outset let me state, that an evidentiary hearing is not required on this Petition. The resolution of the Petitioner's claims is not dependent on any evidence outside of the trial or appellate records, and with one or two exceptions to be dealt with hereinafter, all involve questions of law and not disputed facts. Further, a good number of the Petitioner's claims are procedurally barred by [New Jersey Rule of Court] 3:22-4 … The only issues which survive the application of the procedural bar are: (1) The ineffectiveness of Trial Counsel and Appellate Counsel, and I am stretching the exceptions in favor of the Petitioner to consider Trial Counsel's alleged ineffectiveness here; and (2) The possible applicability *of State v. Natale* to his sentence.

(D.E. No. 1-6 at 7-9 ("*Massey II*")). As for the ineffective assistance of counsel ("IAC") claim, *Massey II* ruled: "Defendant has failed to satisfy either prong of the *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] test. He has not made a prima facie case." (*Id.* at 15).

In February 2008, Petitioner appealed the denial of PCR, arguing: trial counsel was ineffective for entering into a stipulation regarding the victim's medical records ("the Stipulation"); the PCR judge erred in refusing to hold an evidentiary hearing with respect to his allegations that counsel had rendered IAC by failing to interview J.L.'s ex-husband; and excessiveness of sentence. (D.E. Nos. 18-2 and 18-3).

In an October 16, 2008 written opinion, the Appellate Division: (1) affirmed the decisions of the PCR judge on all issues except ineffectiveness of trial counsel by (a) failing to call or interview Laderman and (b) failing to explore other potential witnesses; and (2) remanded for an evidentiary hearing on the IAC issue of "failure to call or interview Laderman and the failure to explore other potential witnesses." (D.E. No. 18-12 at 14-15 ("*Massey III*")).

On February 4, 2009, the New Jersey Supreme Court denied Petitioner's petition for certification. (D.E. No. 18-16).

At the December 10, 2009 remand hearing (D.E. Nos. 20-25 and 20-26), Massey's trial counsel, Alan Bowman, Esquire ("Bowman"), testified that either he or his paralegal had contacted Laderman before trial. Laderman, who also testified at the remand hearing, denied being contacted by Bowman or anyone from his office. However, Laderman said he did speak with an investigator, whom he believed was hired by Massey. (D.E. No. 1-7 at 6-7). Explaining the court's reasons in detail (D.E. No. 20-27 at 2-18 (*State of New Jersey v. Massey*, No. A-3627-09T4, Superior Court of New Jersey, Law Division (Mar. 18, 2010)) (("*Massey IV*")), the judge concluded that, even if Laderman's testimony had been offered at trial, the verdict would not have differed. (*Id*. at 18-19). The March 23, 2010 order denied PCR on this claim. (D.E. No. 1-12 at 1).

On appeal of PCR denial, Petitioner argued: (1) Bowman rendered IAC in failing (a) to interview Laderman in order to identify other persons with knowledge and (b) to call Laderman as

a witness; (2) Bowman's factual recollection was flawed; and (3) denial of PCR was "proof of the prejudice that [Petitioner] has suffered as a result" of IAC. (D.E. No. 1-7 at 12-13).

In a written opinion dated September 24, 2012, the Appellate Division affirmed denial of PCR. *State of New Jersey v. Massey*, No. A-3627-09T4, Superior Court of New Jersey, Appellate Division (Sept. 24, 2012) ("*Massey V*") (D.E. No. 1-7). The New Jersey Supreme Court denied Petitioner's petition for certification on March 25, 2013. (D.E. No. 19-13; D.E. No. 19-10).

Petitioner then filed a habeas petition with this Court on June 3, 2013, raising seven claims. (D.E. No. 1). Respondents were ordered to file an answer (D.E. No. 8) and did so on February 14, 2014, asserting such arguments as Petitioner's failure to exhaust, lack of merit, failure to satisfy the habeas standard of review, procedural bar, and failure to state a claim for habeas relief. (D.E. Nos. 14, 14-1, and 14-1 at 3).

IV.   **ANALYSIS**

A.   **Legal Standard**

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254 now provides, in pertinent part: "(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners have the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Parker v. Matthews*, 567 U.S. 37, 40-41 (2012); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). District courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

**B.  Exhaustion and Procedural Default**

*Exhaustion*: In addition to the above requirements for habeas corpus relief, a federal court may not grant a writ under § 2254 unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). *See also Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *cert. denied*, 532 U.S. 919 (2001)

(finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts"). Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. *See Lundy*, 455 U.S. at 519.

To meet the exhaustion requirement, a petitioner must "'fairly present' all federal claims to the highest state court before bringing them in federal court." *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Stevens v. Delaware Corr. Ctr.*, 295 F.3d 361, 369 (3d Cir. 2002)). This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'" *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)). In other words, a petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("[R]equiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State."); *Lambert*, 134 F.3d at 513 (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Picard v. Connor*, 404 U.S. 270, 275 (1971).

Petitioners generally bear the burden to prove all facts establishing exhaustion. *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of claims asserted in the federal habeas petition. *See Picard*, 404 U.S. at 275. Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same. *See id*. at 277. The exhaustion doctrine is a "total" exhaustion rule, in that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." *Lundy*, 455 U.S. at 522.

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. *See Lundy*, 455 U.S. at 522; *Banks v. Horn*, 126 F.3d 206, 212-14 (3d Cir. 1997); *see also Toulson*, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies.").

*Procedural Default*: Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. *See Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment." *Leyva*, 504 F.3d 365-66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007); *see also Gray v. Netherland*, 518 U.S. 152 (1996); *Coleman v. Thompson*, 501 U.S. 722 (1991)). If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Leyva*, 504 F.3d at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

*Denial on the merits*: To the extent that a petitioner's constitutional claims are unexhausted or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005).

## V.  DISCUSSION

### A.  Grounds One and Two of the Petition: Ineffective Assistance of Counsel

In Ground One, Petitioner alleges an IAC argument. He claims that trial counsel failed to investigate phone records and to interview witnesses Laderman, "the ex-husband Roberto Lopez[,] []or the baby's father, Eddie Carbone." (D.E. No. 1 at 14-17). Petitioner says he met both prongs of the *Strickland v. Washington*, 466 U.S. 668 (1984) test. (*Id*).

In Ground Two, Petitioner again claims that his trial counsel "fail[ed] to investigate." (D.E. No. 1 at 17). Petitioner contends, as in Ground One, that "Laderman's testimony should have been put before [the] jury" and that Bowman failed to investigate "phone records." (*Id*.). Ground Two additionally alleges that trial counsel: (1) made no search "for the person [the victim] introduced to Claudia Quintero[2] as her husband; (2) did not search for "a possible DNA match . . . that excluded Petitioner"; (3) did not "request a complete DNA analysis of other evidence collected [from J.L.'s apartment]; (4) did not investigate "missing investigative reports"; and (5) did not "contact investigating Det[ectives] Larry Malang and Luis Cruz." (*Id*.).[3]

---

[2]     Claudia Quintero ("Quintero") was "a resident of the same apartment building as J.L." (D.E. No. 1-4 at 6).

[3]     For discussion purposes, the Court refers herein to these claims as follows: claims in Grounds One and Two regarding IAC as to witness Laderman are "Laderman IAC Claim"; claims in Grounds One and Two regarding IAC as to investigation of phone records are "Phone Records Investigation Claim"; claims in Ground One regarding IAC as to Roberto Lopez, Eddie Carbone, the person introduced by J.L. to Claudia Quintero, Detective Larry Malang, and Detective Luis Cruz are "Other Witnesses IAC Claim"; and claims in Ground Two regarding IAC as to possible DNA match, DNA analysis, and missing investigative reports are "Evidence Search Claim."

This Court finds from careful review of the record that: (1) the state court ruling on the Laderman IAC Claim was not contrary to or an unreasonable application of Supreme Court precedent, and thus habeas relief shall be denied; and (2) while the Phone Records Investigation Claim, Other Witnesses IAC Claim, and Evidence Search Claim were not fairly presented to state courts and thus appear unexhausted, this Court may—and does—nevertheless deny them on the merits.

*Laderman IAC Claim*: Petitioner raised the Laderman IAC Claim in his PCR petition. (D.E. No. 1-6 at 10). The PCR trial court rejected it, finding that Petitioner had failed to establish either deficient performance or prejudice. (*Id*. at 10-12). On appeal of PCR denial, *Massey III* affirmed on all issues except counsel's alleged failure to call or interview Laderman and failure to explore other potential witnesses. As to those issues, *Massey III* remanded for an evidentiary hearing (D.E. No. 18-12 at 14), which occurred on December 10, 2009. (D.E. Nos. 20-25 and 20-26). The *Massey IV* court denied PCR on the Laderman remand issue. (D.E. No. 20-27 at 19). On Petitioner's appeal (D.E. No. 1-7 at 12-13), *Massey V* affirmed denial of PCR. (D.E. No. 1-7).

In assessing habeas claims, the Court looks to the last reasoned state court decision on the merits. *See Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009). A determination as to which state court ruling is the last reasoned decision depends upon the issue raised. The *Massey V* Appellate Division on appeal of PCR denial did not unreasonably apply *Strickland* to the facts of Petitioner's case, as now illustrated.

After the evidentiary hearing on the Laderman IAC Claim, *Massey IV* had pointed to multiple instances where "Defendant failed to satisfy either prong of the *Strickland* test." (D.E. No. 20-27 at 19). Indeed, that court stated as follows:

> One cannot forget that Laderman's importance as a witness did not
> become known to Counsel until shortly before the trial. For the 15

months between arrest and DNA results, the Defendant denied even being present at the scene. If he wasn't at the scene, then he couldn't have seen the mysterious Hispanic male or assumed that man was the victim's husband, rendering Laderman's entire testimony irrelevant. Consequently, Laderman was not even on Counsel's radar until shortly before trial. He simply had no reason to speak with him, other than to make the inquiry that he did about the availability of a pass key to the Defendant.

Counsel cannot be faulted, even if the facts were interpreted as indicating a failure to investigate Laderman during the time period, [if] his own client lied to him regarding the essential facts upon which he had to base his Defense. During that period, the fault lies entirely with the Defendant, thereby concealing from his attorney the facts necessary to assess Laderman's importance to the Defense.

To summarize, I find the proofs establish Mr. Laderman was interviewed about the matter by an investigator working on the Defendant's behalf pretrial.

I find that the failure to focus more attention on Laderman's potential as a witness was the direct result of the Defendant's deception of his lawyer and not a consequence of Counsel's professional conduct of this Defense. I further find that in light of the fact that Ms. Quintero was on the State's witness list, Counsel understood that he could and, in fact did, introduce evidence respecting the husband's presence at the victim's building through Ms. Quintero and that therefore Counsel could reasonably have believed Laderman was unnecessary as a witness.

However, even if one were to consider Counsel ineffective for not pursuing Laderman, that error could not have and did not have any effect on the outcome of the trial.

If Laderman had testified to the evidence he revealed on the remand at trial, there is absolutely no doubt in my mind that his testimony would not in any way have altered the result. The entire Defense was based upon the testimony of a lying Defendant and multiple illogical and unreasonable inferences he sought the jury to draw from unreliable evidence. The State's case, on the other hand, was consistent, cogent, logical, reasonable and corroborated by scientific and medical evidence.

(D.E. No. 20-27 at 17-19).

The Appellate Division in *Massey V* discussed at length the facts relevant to the Laderman

IAC Claim, as pertinent to the *Strickland* standard:

> For the purposes of our opinion, we will assume that Massey has satisfied the first *Strickland* prong, although we note that the PCR judge found otherwise. We will focus instead on the judge's determination that Laderman's testimony would not have produced a different result.
>
> Massey correctly argues that Laderman would have been permitted to testify that J.L. told him that she had given the key to her apartment to a male and that he sometimes visited her. He would also have been permitted to testify to his single observation of a man leaving the apartment, as well as J.L.'s identification of the man. However, it is clear from Laderman's testimony that he was uncertain whether the person mentioned by J.L. and seen by him was J.L.'s husband or the father of her child, because Laderman assumed they were the same person. Once he was challenged on the issue, Laderman began to use both references. For example, he testified that, when he asked J.L. about the man he saw running out of the apartment, she responded "the father of my child, my husband." Laderman's uncertainty, in light of J.L.'s testimony that they were two different people, would have significantly undercut the value of his testimony.
>
> The judge's careful analysis of Laderman's potential testimony, which he did not find credible, in light of the trial evidence, which the judge had experienced firsthand as the trial judge, further demonstrated that a different result was unlikely. For example, the judge pointed to Massey's initial denial of having had any sexual relationship with J.L., followed by his revised version of events, involving a consensual relationship, fear of the husband, and the unknown male, which was put forth by Massey only after the results of the DNA testing were received shortly before trial. While Laderman's testimony, if believed, might have added a bit to the plausibility to Massey's revised version of events, the judge correctly noted that it did not explain the fresh injuries to the child, which were clearly inconsistent with a consensual sexual relationship between Massey and J.L.
>
> Our review of the record satisfies us that Massey failed to satisfy the second prong of the *Strickland* test because he failed to demonstrate "a reasonable probability that … the result of the (trial] would have been different" had Laderman testified at trial . . . Consequently, we

> affirm the dismissal of Massey's PCR petition, substantially for the
> reasons set forth in the PCR judge's oral decision.

(D.E. No. 1-7). Thus, *Massey V* ruled that Petitioner had not made a prima facie claim of IAC.

*Massey V* is not contrary to or an unreasonable application of Supreme Court precedent.

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied: deficient performance and prejudice. *Id.* at 687.

First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness." *Hinton v. Alabama*, 571 U.S. 263, 272 (2014). For IAC claims under *Strickland*, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). "[A]dvocacy is an art and not a science, and the adversary system requires deference to counsel's informed decisions, [so] strategic choices must be respected in these circumstances if they are based on professional judgment." *See Strickland*, 466 U.S. at 681; *see also Hess v. Mazurkiewicz*, 135 F.3d 905, 908 (3d Cir. 1998) ("Our review of [IAC] claims does not permit us, with the benefit of hindsight, to engage in speculation about how the case might best have been tried. We therefore accord counsel's strategic trial decisions great deference.").

Second, the defendant must show that "there is a reasonable probability that the result of trial would have been different absent the deficient act or omission." *Id*. at 1083; *see also Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. On habeas review, it is not enough that a federal judge would have found counsel ineffective. The judge must find that the state court's resolution of the issue was unreasonable—a higher standard. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

*Massey V*, assuming a showing of *Strickland* deficient performance for discussion purposes only, found that Petitioner had not shown prejudice. Given that failure to meet either prong of the constitutional test defeats IAC claims, *see United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002), *Massey V* was not contrary to and did not unreasonably apply *Strickland*. 28 U.S.C. § 2254(d). For example, the record supports the state court's determination that a different outcome at trial was unlikely, in light of Laderman's uncertainty, Massey's initial denial and subsequent revised versions of events, nature of the injuries to the victim's son, and scientific and medical evidence presented by the State confirming the "positive DNA match proving to an exact certainty" the Petitioner's DNA with post-assault samples taken from J.L. at the hospital. (D.E. No. 1-7 at 16-17; *see also* D.E. 20-27 at 11 (the defense was not "even remotely viable")).[4]

In sum, Petitioner has not shown that adjudication of the Laderman IAC Claim by *Massey V* was contrary to, or involved an unreasonable application of, *Strickland* and its progeny. *See Premo v. Moore*, 562 U.S. 115, 122 (2011) (citation omitted) (when the *Strickland* analysis is

---

[4]     In any event, *Massey IV* had specifically found that "Mr. Laderman *was* interviewed about the matter by an investigator working on the Defendant's behalf pretrial." (D.E. No. 20-27 at 18) (emphasis added). Laderman's testimony was consistent with this finding. (*Id*. at 5). This finding of fact by *Massey IV*, and *Massey V*'s affirmance of it, further supports the state courts' consistency with *Strickland*.

combined with 28 U.S.C. § 2254(d), federal habeas courts' analysis is "doubly" deferential to both the state court and the defense counsel). For these reasons, the Laderman IAC Claim in Ground One is denied habeas relief.

_Other Witnesses IAC Claim_: Petitioner's Other Witnesses IAC Claim in Grounds One and Two is likely unexhausted[5] because it was raised for the first time in the habeas Petition.[6] Nevertheless, putting aside the failure to exhaust, for the following reasons, this claim fails on the merits.

In this habeas proceeding, Petitioner has not demonstrated either: that his counsel rendered deficient performance as to witnesses Lopez, Carbone, Malang, Cruz, or the person introduced to Quintero as J.L.'s husband; or that Mr. Bowman's performance as to these witnesses prejudiced Petitioner's case at trial. He has not shown either "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"[7] or that counsel's allegedly deficient performance "deprive[d] [Petitioner] of a fair trial . . . whose result is reliable"[8] with respect to the Other Witnesses.

For example, Petitioner alleges that Mr. Bowman made "no contact with state investigating Det. Larry Malang and Luis Cruz" (D.E. No. 1 at 17), but Petitioner does not explain specifically what these two witnesses would have contributed to defense arguments at trial. Petitioner likewise

---

[5]     _See Baldwin v. Reese_, 541 U.S. 27, 29 (2004); _Evans v. Court of Common Pleas, Delaware Cty., Pa._, 959 F.2d 1227, 1230 (3d Cir. 1992) ("A claim must be presented not only to the trial court but also to the state's intermediate court as well as to its supreme court.").

[6]     _See Massey I_, D.E. 1-14 at 11 ("Not raised below"); _Massey II_ (D.E. No. 1-6 at 10, 12) (summarizing Petitioner's PCR claims of IAC: "counsel's failure to call a potential defense witness, one Martin Laderman … entering into the Stipulation in this case regarding certain DNA evidence and to the hospital records of the victim's son"); _Massey III_, D.E. 18-12 at 12-14 (discussing Massey's PCR appeal of the ruling on his IAC claim regarding witnesses, which Petitioner asserted only as to Laderman)).

[7]     _Strickland_, 466 U.S. at 687; _see also United States v. Shedrick_, 493 F.3d 292, 299 (3d Cir. 2007).

[8]     _Strickland_, 466 U.S. at 687; _Shedrick_, 493 F.3d at 299.

does not demonstrate how counsel's failure to use them as witnesses in fact prejudiced the defense's presentation at trial. Petitioner's unsubstantiated references to Lopez and Carbone, made without description of what they would have particularly contributed to his defense or how failure to use them at trial actually prejudiced Petitioner, are analogous. (D.E. No. 1 at 15, 24). Finally, Quintero in fact identified Petitioner at trial; thus, the purported "actual search" he criticizes Mr. Bowman for not having undertaken would have been pointless.

Since "failure to satisfy either prong defeats an ineffective assistance claim,"[9] the Other Witnesses IAC Claim in Ground One lacks merit and is denied.

_Phone Records Investigation Claim and Evidence Search Claim_: These claims are unexhausted because they were raised for the first time in the habeas Petition. (_See_ D.E. Nos. 1-4, 18-12, and 1-7 (no mention of phone record search, DNA match, DNA analysis, or missing investigative report issues among claims raised on direct appeal or PCR). Nevertheless, neither the Phone Records Investigation Claim nor Evidence Search Claim has merit.

First, Petitioner has not demonstrated deficient performance by counsel. Exercise of legal strategy is afforded great deference. _See Strickland_, 466 U.S. at 690. It is not a stretch to engage in that presumption here, given the professional judgment appellate counsel exercised in weighing the risks, benefits, and realistic worth of requesting trial transcripts regarding (and making arguments as to): phone calls (of which Petitioner himself was aware, having claimed to have been party to them and having in fact used them as part of his defense at trial) (D.E. No. 1 at 14), DNA (as to which forensic scientist Edward LaRue at trial identified Petitioner as the "positive" match "to a scientific certainty") (D.E. 20-7 at 11, 13), and investigative reports (which Petitioner has failed to allege and show were _not_ in fact provided by the State in discovery). Thus, Petitioner was

---

[9]     _Strickland_, 466 U.S. at 697-98.

aware of these evidentiary and phone-call issues before any PCR appeal proceedings began. Habeas petitioners face a stringent requirement to show that, given all the circumstances, "counsel's mistake was so egregious that it fell 'outside the wide range of professionally competent assistance.'" *Branch,* 758 F.3d at 234, 235 (internal citation omitted). Given the need for exercise of professional legal strategy as to the use of these issues during appeal, this Court cannot say that appellate counsel rendered deficient performance with respect to them.

Second, Petitioner has not demonstrated *Strickland* prejudice from the challenged conduct by appellate counsel. Petitioner has not shown to a reasonable probability that the phone records, DNA match, DNA analysis, and missing reports would have altered the outcome of his proceedings and resulted in an unreliable jury verdict being sustained on appeal. Given the "overwhelming evidence" against Petitioner at trial (D.E. 1-6 at 14), Petitioner cannot demonstrate a reasonable probability that, but for appellate counsel's decisions about obtaining phone records, DNA matches, DNA analyses, and "missing" reports (as characterized by Petitioner), these items would have exculpated Petitioner in the jury's eyes to a reasonable probability. As *Massey IV* explained:

> Contrasted with the Defendant's incredible, illogical, unreasonable, and inconsistent versions of these events, juror[s] hear[d] a single, consistent, corroborated version of events from the victim. There was no doubt who was telling the truth and who was lying at this trial … The entire Defense was based upon the testimony of a lying Defendant and multiple illogical and unreasonable inferences he sought the jury to draw from unreliable evidence. The State's case, on the other hand, was consistent, cogent, logical, reasonable and corroborated by scientific and medical evidence.

(D.E. No. 20-27 at 18-19). In short, even if appellate counsel had obtained the supposed items as Petitioner suggests he should have, it would not have changed the case's outcome.

For these reasons, the Court denies habeas relief of the Phone Records Investigation Claim and Evidence Search Claim.

**B.** **Ground Three: Jury Instruction Regarding Prior Inconsistent Statements**

Petitioner next argues that the trial court should have given a jury instruction on prior inconsistent statements, in light of the victim's inconsistent identification accounts. Specifically, he alleges that: (1) J.L.'s testimony, in which she identified petitioner at trial as her assailant, differed from the statement she initially gave to police that she could not see her attacker's face because he covered it when she turned on the light after the assault; (2) J.L.'s trial testimony, in which she denied having told Claudia Quintero that Petitioner was her husband, differed from testimony that J.L. had told Quintero he *was* her spouse[10]; and (3) J.L.'s trial testimony differed from her civil suit deposition.[11]

The state court ruling on the Inconsistent Statements/Testimony Claim was not contrary to or an unreasonable application of Supreme Court precedent. While the Inconsistent Statement/Deposition Claim was not fairly presented to the state courts and thus appears unexhausted, this Court may—and does—nevertheless deny it on the merits.

*Inconsistent Statements/Testimony Claim*: At trial, J.L. testified that she believed the police misunderstood her when she supposedly told them she could not see her attacker's face because he had covered it. J.L. testified that Petitioner did attempt to cover his face when she turned on the light, but that she was in fact able to see him anyway. (D.E. 1-4 at 14).

Also at trial, Claudia Quintero testified that J.L. had once come to Quintero's apartment, accompanied by J.L.'s son and the Petitioner, asking Quintero for a screwdriver. During this

---

[10]     Issues (1) and (2) are collectively referred to as the "Inconsistent Statements/Testimony Claim."

[11]     Issue (3) is referred to as the "Inconsistent Statement/Deposition Claim."

conversation, Quintero asked J.L. if Petitioner was her husband, and J.L. answered "yes." Quintero

testified that even though she asked J.L. if Petitioner was her husband, and J.L. responded

affirmatively, Quintero acknowledged that she believed J.L. misunderstood her question and

thought Quintero was asking about J.L.'s son. (*Id*. at 6, 14).

The trial court gave extensive jury instructions regarding witness credibility:

> Now, in my preliminary charge when we started the case, I
> explained that you are the judges of the facts. And, as judges of the
> facts, you are to determine the credibility of the various witnesses,
> as well as the weight to be attached to their testimony. You, and you
> alone, are the sole and exclusive judges of the evidence, of the
> credibility of the witnesses, and the weight to be attached to the
> testimony of each witness. Regardless of what counsel or I may have
> said recalling the evidence in this case, it is your recollection of the
> evidence that should guide you as judges of the facts …

> Now, as judges of the facts, you are to determine the credibility of
> the witnesses. And in determining whether a witness is worthy of
> belief, and, therefore, credible, you may take into consideration: The
> appearance and demeanor of the witness; the manner in which he or
> she may have testified; the witness's interest in the outcome of the
> trial, if any; his or her means of obtaining knowledge of the facts;
> the witness's power of discernment, meaning their judgment or
> understanding; his or her ability to reason, observe, recollect and
> relate; the possible bias, if any, in favor of the side for whom the
> witness testified; the extent to which, if at all, each witness is either
> corroborated or contradicted, supported or discredited by other
> evidence; whether or not the witness testified with an intent to
> deceive you; the reasonableness or unreasonableness of the
> testimony the witness has given; and any and all other matters in the
> evidence which serve to support or discredit his or her testimony.
> Through this analysis, as judges of the facts, you weigh the
> testimony of each witness and then determine the weight to give to
> it. Through that process, you may accept all of it, a portion of it, or
> none of it …

> Now, if you believe that any witness or party willfully or knowingly
> testified falsely to any material fact in this case with the intent to
> deceive you, you may give such weight to his or her testimony as
> you deem it is entitled. You may believe some of it, or you may, in
> your discretion, disregard all of it.

(D.E. No. 20-19 at 7, 11-12, 17). The court also addressed the credibility issue particular to the

J.L. deposition:

> Here the defendant has introduced evidence, through the cross-examination of [J.L.], that she has, subsequent to the state's initiation of criminal proceedings, instituted a civil action seeking monetary damages she claims she sustained as a result of the defendant's conduct. The fact of such filing has been admitted in evidence and may be considered by you only as it may bare on her credibility or believability as a witness in a case. You, of course, are free to assign whatever significance to that act as you feel such evidence deserves on the issue of [her] credibility. You may find it has great, moderate, light or no impact at all on her testimony. Of course, the filing of a civil suit alone does not in any way impair a witness's credibility. In order for you to properly assign that fact any weight, as affecting Ms. L[]'s credibility, you must find her testimony here, in this case, has been shown to you to have been improperly influenced or affected by the possibility of compensation in that civil proceeding. If you do not find her testimony was affected by the possibility of compensation in the civil matter, then this issue should not factor into your evaluation of her credibility. On the other hand, if you find her testimony was improperly influenced by her desire for monetary compensation, then you may assign whatever weight to such a finding you deem appropriate on the issue of credibility. The weight to be assigned to such a finding should be in reasonable proportion to the effect you find such consideration had on her testimony, if at all.

(D.E. No. 20-19 at 15-17).

On Petitioner's direct appeal, the Inconsistent Statements/Testimony Claim was rejected

by the *Massey I* court. (D.E. No. 1-4 at 9, 14). First, as to J.L.'s testimony regarding her view of

her attacker's face after the assault and her subsequent at-trial identification of him, the *Massey I*

court applied the "plain error standard of review" and "fail[ed] to see where the prior inconsistent

instruction was warranted. There was no error, much less plain error." (D.E. No. 1-4 at 14, 15

(observing that "J.L. testified at trial that she believed the police misunderstood her to say that she

could not see her attacker's face because he covered it. At trial, she testified that defendant

attempted to cover his face when she turned on the light, but that she was able to see him

anyway")). Second, as to Quintero's testimony regarding conversation with J.L. that Petitioner was J.L.'s husband, and J.L.'s subsequent denial at trial of making such statement to Quintero, the *Massey I* court "question[ed] whether J.L. made any inconsistent statements to even warrant a prior inconsistent statement charge. Specifically, Ms. Quintero testified that even though she asked J.L. if Petitioner was her husband, and J.L. responded affirmatively, Ms. Quintero acknowledged that she believed J.L. misunderstood her question and thought Ms. Quintero was asking about her son." (*Id*. at 15). The New Jersey Supreme Court denied Petitioner's petition for certification. (D.E. No. 16-4).[12] The Inconsistent Statements/Testimony Claim was not addressed on the merits by a trial-level PCR court or by the Appellate Division on any PCR appeal.

The paramount question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Estelle v. McGuire,* 502 U.S. 62, 73 (1991), and "not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Jacobs,* 395 F.3d at 111 (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68. "Questions related to jury charges are normally matters of state law and are not cognizable in federal habeas review." *Paulino v. Ortiz,* No. 03–4463, 2005 WL 2922369, at *4 (D.N.J. Nov. 4, 2005). A habeas claim will lie only where "the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness." *Id.* at *4 (quotations omitted). To show that a jury instruction so infected the trial, "a habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency,

---

[12]     Petitioner's 119-page pro se brief on PCR (D.E. Nos. 17-1 at 3-35; 17-2 at 1-35; 17-3 at 1-35; 17-4 at 1-34) did not assert claims regarding jury instructions as to prior inconsistent statements. Instead, Petitioner confined his jury instruction challenges on PCR to only those regarding burglary, weapon evidence, and weapon possession instructions. (D.E. No. 17-1 at 4). Petitioner's pro se April 2004 Verified Petition for PCR (D.E. No. 17 at 6-7) made these same jury instruction challenges.

*and* (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams v. Beard,* 637 F.3d 195, 223 (3d Cir.2011) (emphasis added) (quoting *Waddington v. Sarausad,* 555 U.S. 179, 189 (2009)) (internal quotation marks omitted). "An omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

Petitioner has not made the requisite showings for habeas relief in this case.

First, Petitioner has not demonstrated any ambiguity, inconsistency, or deficiency in the given charge. The trial court in fact stressed to the jurors their obligation to weigh witnesses' credibility. (D.E. No. 20-19 at 7, 11-12, 15-17). For example, the trial judge itemized over ten factors the jury could consider in determining whether a witness was worthy of belief, including "the extent to which, if at all, each witness is either corroborated or contradicted, supported or discredited by other evidence." (*Id*. at 11). The trial court instructed the jury to focus on varying accounts of events, if any. (*Id*.). *Massey I* reasoned that Petitioner therefore was not deprived of a fair trial by omission of a specific charge on prior inconsistent statements. This Court agrees.

Second, Petitioner has not demonstrated a constitutional violation from "a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams,* 637 F.3d at 223. The court's general instruction encompassed the point that a witness's credibility could be discounted as a result of inconsistent statements, whether resulting from a failure to recollect or an intent to deceive. (D.E. No. 20-19 at 7, 11-12, 15-17). The charge did not relieve the State of proving any element of any of the crimes for which Petitioner stood trial. Rather, the trial court instructed that the State must prove beyond a reasonable doubt each element of each charged offense. (D.E. Nos.

20-19 at 5-6 and 17-35; 20-20 at 1-15). Petitioner fails to point to any federal requirement that a specific credibility charge be provided in this instance; nor can he demonstrate that the lack of the proposed charge deprived him of a defense that federal law provided to him. *Johnson v. Rosemeyer,* 117 F.3d 104, 110 (3d Cir. 1997). Moreover, jury charges on prior inconsistent statements merely inform as to certain types of evidence and are typically provided as a guide for the jury to evaluate the evidence at trial. They are *not*, unlike jury charges as to elements of offenses and burdens of proof, required instructions. And as stated above, Petitioner's claim of error is based on omission, which the Supreme Court has stated is less serious than a misstatement of the law. *See Henderson*, 431 U.S. at 155. Furthermore, the Court finds that the lack of such an instruction to the jury did not affect the trial's outcome, as there was sufficient evidence at trial to support Petitioner's conviction. *See* D.E. No. 1-7 at 11-12.[13]

Given the content of the general witness credibility charge and considering the overwhelming weight of evidence of guilt presented at trial, this Court does not find that the absence of a specific instruction on prior inconsistent statements so infected the trial with unfairness as to amount to a violation of due process. *See Paulino*, 2005 WL 2922369, at *3 (where court provided general credibility charge, lack of specific instruction on prior inconsistent statements did not warrant habeas relief). There is no basis for this Court to conclude that *Massey I*'s ruling was contrary to, or an unreasonable application of, Supreme Court precedent. The omission of a supplemental instruction on credibility, even assuming it was erroneous under state law (which has not been established), did not rise to the level of a constitutional violation. Jurors

---

[13]     "The entire defense was based upon the testimony of a lying Defendant and multiple illogical and unreasonable inferences he sought the jury to draw from unreliable evidence. The State's case, on the other hand, was consistent, cogent, logical, reasonable and corroborated by scientific and medical evidence . . . The evidence presented by the defense in this matter, even supplemented with Laderman's testimony would raise no more than a possible doubt as to the Defendant's guilt. A reasonable jury hearing this case would, as the jury here did, find this Defendant guilty beyond a reasonable doubt." (D.E. No. 1-7 at 11-12).

were well aware of their responsibility to assess the truthfulness of the witnesses' testimony regarding purportedly contradictory testimony (as well as other matters). Petitioner's conviction was based on a credibility determination by the jurors, who chose to believe the State's witnesses. Hence, this Court likewise concludes that the absence of a jury instruction on prior inconsistent statements, when viewed in the context and evidence of this case, did not so infect the trial with unfairness as to violate Petitioner's due process rights.

For all of these reasons, the Inconsistent Statements/Testimony Claim in Ground Three fails on the merits and is denied habeas relief.

_Inconsistent Statements/Deposition Claim_: In Ground Three (D.E. No. 1 at 20), Petitioner alleges that J.L.'s testimony at trial regarding her ability to see her attacker's face and regarding whether she had ever introduced Petitioner to Quintero as J.L.'s husband differed from statements J.L. gave during her civil suit deposition. (D.E. No. 20-2 at 30-31[14]; D.E. No. 20-4 at 19-26[15]; D.E. No. 20-5 at 7-10,[16] 20-21, and 25-26[17]). Petitioner did not raise this inconsistent testimony claim

---

[14]     "J.L.: What I'm saying [is] that I never introduced to the lady [Quintero] anyone as my husband." (D.E. No. 20-2 (August 15, 2001 trial transcript)).

[15]     "Mr. Bowman: Do you remember giving a taped statement on July 22nd, 1998? J.L.: Yes, I remember … Mr. Bowman: Okay. And do you recall responding: 'And when he told me [he wanted] [$]1,000, I asked him to let me check over there in my working bag. And he said, Okay. He put his coat on and everything else, his clothes.' J.L.: Yes. Mr. Bowman: And then you recall somebody asking, 'He put his clothes on?' J.L.: Yes. Mr. Bowman: And do you recall responding: 'Yes, he put his clothes on. And I made believe I was checking on something, but I knew he didn't have—I knew I didn't—anything in there. And from there I got up to turn the light on, I got up and went to the door. The light switch was right there. I turned it on. He just came and turned it off again and pushed me to the bed, but he covered his face, so I couldn't see it.' Was that the truth? J.L.: Yes, yes. Mr. Bowman: So when you turned on the light, you didn't see the person's face. Is that correct? J.L.: I saw the person's face. Mr. Bowman: Did you … J.L.: But he covered. I saw, I saw him. Mr. Bowman: Did you say, on July 22, 1998, 'But he covered his face so I couldn't see it'? J.L.: Perhaps they didn't understand me. He covered, he covered, but I was able to see his face. That's why I was able to recognize him." (D.E. No. 20-4 at 19-26 (August 26, 2001 trial transcript)).

[16]     "Mr. Bowman: And [at your deposition] on February 27, 2001, did you testify that at the time that you claim your child was slapped, that the baby kept on yelling and screaming, and the man slapped him and threw him to the floor? J.L.: Yes … Mr. Bowman: So when you testified earlier today that the baby cried, but not loudly, that can't be true. Is that correct? … J.L.: I do not recall" (D.E. No. 20-5 at 7-10 (August 16, 2001 trial transcript)).

[17]     "Mr. Bowman: And when the man ran out to run that short distance, you were able, after the door was closed, to get off the bed, run to the door, and to see his features through the peep hole? J.L.: Yes." (D.E. No. 20-25 at 24)

as to J.L.'s deposition on either direct appeal or in his PCR proceedings. (D.E. No. 1-4 at 14-15; D.E. No. 1-6 at 9). Nevertheless, this Court will deny this Claim on the merits pursuant to 28 U.S.C. § 2254(b)(2), notwithstanding Petitioner's failure to exhaust.

As noted above, questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.[18] Only where the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie. The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." *Horn,* 120 F.3d at 416. Where such a constitutional error has occurred, it generally is subject to the "harmless error" standard, determining whether the charge had a "substantial and injurious effect or influence on the verdict." *Id*. at 416-18; *Neder v. United States,* 527 U.S. 1, 8–11 (1999).

In this case, nothing in the challenged instructions operated to lift the State's burden of proof on any essential element of the charged crimes, and Petitioner has not suggested such was the case. Indeed, the trial court properly instructed the jury that:

> Unless each and every essential element of an offense charged is proven beyond a reasonable doubt, the defendant must be found not guilty of that charge. The burden of proving each element of a charge beyond a reasonable doubt rests upon the State, and that burden never shifts to the defendant. A defendant in a criminal case has no obligation or duty to prove his innocence or offer any proof relating to his innocence . . . Now, a reasonable doubt is an honest and reasonable uncertainty in your mind about the guilt of the defendant after you have given full and impartial consideration to all of the evidence … Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.

---

(August 16, 2001 trial transcript)).

[18]     *See Engle v. Isaac,* 456 U.S. 107 (1982); *Henderson v. Kibbe,* 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 309 (3d Cir.), *cert. denied,* 502 U.S. 902 (1991); *Grecco v. O'Lone,* 661 F. Supp. 408, 412 (D.N.J. 1987).

(D.E. No. 20-19 at 5-6). The trial court also spoke about credibility in its preliminary remarks to jurors, stating: "[i]nconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony … Consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from an innocent error or a willful falsehood." (D.E. No. 20 at 31-32). Then at the trial's conclusion, the court received no objections to its charges on credibility. (D.E. 20-18 at 38-40).

A review of the record illustrates that Petitioner has not demonstrated that absence of a prior inconsistent statement charge as to J.L.'s trial testimony and deposition offended any principles of fundamental fairness or due process such that his entire trial and conviction were prejudiced. There was ample evidence against Petitioner to justify his conviction (D.E. No. 20-27 at 18-19), including "consistent, cogent, logical, [and] reasonable [evidence of the State][,] corroborated by scientific and medical evidence." (*Id*.). The trial court expressly instructed the jury that they were to judge the credibility of each witness and determine the weight to give to each one's testimony—including J.L.'s. Therefore, a specific jury charge as to purported inconsistencies between trial testimony and J.L.'s civil deposition was not warranted. Petitioner's conviction was based on a credibility determination by the jury, who chose to believe the State's witnesses over Petitioner's testimony.

In sum, Petitioner has not shown that the actions of the state court in omitting a specific prior inconsistent statement jury charge as to J.L.'s deposition resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Thus,

the Inconsistent Statement/Deposition Claim is without merit and Petitioner is not entitled to habeas relief on it.

Accordingly, the Inconsistent Statements/Deposition Claim in Ground Three is also denied.

**C.** **Ground Four: Trial Court Errors; and Ground Seven: Trial Court Errors, NERA Challenge, and Excessiveness of Sentence**

In Ground Four of the Petition, Petitioner claims that "[t]he trial court violated the Petitioner's right to a fair and impartial jury and the right to confront witnesses by improperly weighing the probative and prejudicial values of the stipulation offered for deliberation by the jury, and violated Petitioner's rights to Due Process by improper, erroneous and prejudicial jury instructions on substantive law." (D.E. No. 1 at 22). In support of his claim, Petitioner alleges:

(1)     The trial court "improperly weight[ed] the stipulation . . . [regarding] the treating pediatric physician notes" and allowed its admission concerning injuries of J. L.'s son, instead of requiring testimony from the examining physician (this claim is referred to as Petitioner's "Stipulation Claim") (D.E. 1 at 21-22; D.E. No. 20-18 at 33-34);

(2)     The trial court "truncated the jury instruction on the clarification of burglary" and gave a "conflicting instruction on the weapons charge" in response to jurors' questions about elements of the charges. Petitioner also alleges improperly "truncated" jury instructions in Ground Seven (these "truncated" and "conflicting" jury charge claims in Grounds Four and Seven are referred to as Petitioner's "Substantive Jury Instruction Claim") (D.E. No. 1 at 22, 23);

(3)     The trial court erred when it "insist[ed] that Petitioner change his position when the DNA results showed the presence of the Petitioner's DNA. This false assessment evidence was

presented to the jury during prosecutor's summation" (this claim is referred to as Petitioner's "Post-DNA Claim") (D.E. No. 1 at 24; D.E. No. 20-18 at 23-24[19]); and

(4)     The trial court made "persistent and prejudicial reference to who caused those injuries to the child in support of all of his decisions to deny [P]etitioner's PCR" (this claim is referred to as Petitioner's "Prejudicial Statements Claim"). (D.E. 1 at 24).

For the reasons explained below, habeas relief is denied on all of these claims.

_Stipulation Claim and Substantive Jury Instruction Claim_: Petitioner raised the Stipulation Claim and the Substantive Jury Instruction Claim for the first time in his PCR petition. (D.E. No. 17-1 at 4-6; D.E. No. 17-8 at 2-3). Relying on New Jersey Rule of Court 3:22-4, the PCR trial court in _Massey II_ determined that the only issues to survive the application of the procedural bar were Petitioner's IAC and excessive sentencing claims. (D.E. No. 1-6 at 9) (noting that Rule 3:22-4 provides that any issue that could have been raised on direct appeal but was not is not a viable ground for PCR unless one of three exceptions is established: i.e., the issues "could not reasonably have been raised in any prior proceeding, enforcement of the bar would result in fundamental injustice, [or] denial of relief would result in [a federal or state constitutional violation]").)

As noted earlier in this Opinion, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule. _See Johnson_, 392 F.3d at 556. As

---

[19]     "MR. BOWMAN: Judge, there's no evidence in this record that everything changed after the DNA report came back in. They didn't ask Mr. Massey about that, your Honor. There's nothing in the record that indicates Mr. Massey had manifested this sometime prior. THE COURT: I'm going to overrule your objection. I think it's a fair inference from the facts, and I believe that Mr. La Rue testified, there was testimony in the case, as to the date the samples were submitted and the report dated. MR. BOWMAN: That's true, but there was no testimony in the record that Mr. Massey became aware of it. There's no evidence in the case that the prosecutor's office was not informed of the defense's consent prior to the DNA coming back. MR. GARDNER: I could strike the day, if that's the objection. THE COURT: I don't think that's objectionable in any event. And I don't believe it's anything other than a fair inference that the prosecutor seeks the jury to draw from the evidence, that at first your client's statement was he was not there, and then subsequent to the receipt of the DNA, then his story changed. MR. BOWMAN: But Mr. Massey testified in this case, and he had an opportunity to establish that that's when the story changed, and he didn't, your Honor. THE COURT: As did you, sir, but neither of you did. I think this is a fair inference. Your objection is overruled". (D.E. No. 20-18 at 23-24).

*Massey II* noted, New Jersey Rule of Court 3:22-4 procedurally bars Petitioner's Stipulation Claim and Substantive Jury Instruction Claim because they should have been raised on his direct appeal but were not. Thus, those claims violate a state procedural rule. Furthermore, Petitioner has not offered any facts or argument whatsoever to demonstrate any of Rule 3:22-4's three exceptions to procedural bar; nor has he made any showings in support of "cause and prejudice" or a "fundamental miscarriage of justice" for this Court to excuse his procedural default of the Stipulation Claim and the Substantive Jury Instruction Claim. *See Leyva*, 504 F.3d at 366.

*Post-DNA Claim and the Prejudicial Statements Claim*: Petitioner has raised the Post-DNA Claim and the Prejudicial Statements Claim for the first time in his habeas Petition. (*See* D.E. Nos. 1-4 at 9-12; 15-3, No. 15-4; 15-5; 17-1; 17-2; 17-3; 17-4 at 1-31; 17-8; 17-9 at 1-28) (no assertions of DNA or prejudicial statements claims in Petitioner's direct appeal or PCR submissions). These claims substantively fail[20] for the following reasons:

First, the Post-DNA Claim is unclear as to precisely what Petitioner means by his contention that the trial court "insist[ed] that Petitioner change his position when the DNA results showed the presence of the Petitioner's DNA. This false assessment evidence was presented to the

_____

[20]    These claims appear to be procedurally defaulted pursuant to New Jersey Court Rule 3:22-4 because Petitioner did not raise them in prior state court direct-appeal or PCR proceedings. *See* D.E. No. 1-6 at 8 (*Massey II*: "[A] good number of the Petitioner's claims are procedurally barred [by] 3:22-4 . . . The only issues which survive the application of the procedural bar are: (1) The ineffectiveness of trial counsel and appellate counsel, and (2) The possible applicability of *State v. Natale* to his sentence"). Petitioner had possessed all the necessary facts and every opportunity to raise the Post-DNA Claim and the Prejudicial Statements Claim prior to habeas review, as the events from which they arose occurred during the trial at which Petitioner was present and testified. *See Coleman*, 501 U.S. at 735 n.1. Moreover, Petitioner has not demonstrated any of the three exceptions to procedural bar that might excuse the default: i.e., that the Post-DNA Claim or Prejudicial Statements Claim "(1) could not reasonably have been raised in any prior proceeding; or (2) that enforcement of the bar . . . would result in fundamental injustice; or (3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey." New Jersey Court Rule 3:22-4(a). Petitioner also has not offered any facts or argument demonstrating the plain error exception to procedural bar: *i.e.*, that the trial court committed plain error either in allowing the prosecutor's summation comment about Petitioner's supposedly changed version of events or in commenting about the cause of injuries to J.L.'s son. New Jersey Rule of Court 2:10–2; *State v. Adams*, 194 N.J. 186, 207 (2008) (the plain error standard allows for reversal if the error was "clearly capable of producing an unjust result"). Thus, the Post-DNA Claim and the Prejudicial Statements Claim appear to be procedurally defaulted.

jury during prosecutor's summation." (D.E. No. 1 at 24). This Court construes this allegation to contend that the trial court made some erroneous evidentiary decision regarding DNA results and also incorrectly allowed improper remarks during the State's summation to the jury. Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process. *Estelle*, 502 U.S. at 70. It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Nor do federal courts' habeas powers permit reversal of convictions based on a belief that a trial judge incorrectly interpreted a state evidentiary rule. The only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Petitioner has not shown that any decision by any of the state courts as to the DNA was either contrary to, or an unreasonable application of Supreme Court law.

Furthermore, to the extent the Post-DNA Claim relies upon arguments arising from comments the State made about DNA evidence during summation (D.E. No. 20-18 at 23-24[21]), this Court notes that prosecutorial misconduct is not a basis for reversal unless the conduct was so egregious that it deprived defendant of a fair trial. *See Parker*, 132 S. Ct. at 2153; *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristofaro*, 416 U.S. 637 (1974)). Accordingly, a prosecutor's statements must constitute a clear infraction and substantially prejudice a defendant's fundamental right to have the jury fairly evaluate the merits of his or her defense in order to warrant a reversal. *State v. Roach*, 146 N.J. 208, 219, *cert. denied*, 519 U.S.

---

[21]     "MR. GARDER: September 8, 1999, over a year later, everything changes. You see, it's no longer an identification case, it's . . ." "MR. BOWMAN: Objection, Your Honor." "COURT: I don't think that's objectionable in any event. And I don't believe it's anything other than a fair inference that the prosecutor seeks the jury to draw from the evidence, that at first your client's statement was he was not there, and then subsequent to the receipt of the DNA, then his story changed." (D.E. No. 20-18 at 24-25). "MR. GARDNER: September 8, 1999, everything changes. It's a whole new ball game, 'cause it's no longer a weak identification case. Now, to the gazillions, it's Anthony Massey. You heard Ed La Rue testify and he testified as to DNA. And he educated us concerning it, and he gave you his conclusions. It's Mr. Massey." (*Id*. at 25).

1021 (1996); *United States v. Young*, 470 U.S. 1, 11-12 (1985). Federal habeas review is limited to determining whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643. Prosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence adduced at trial. *Evans v. D'Ilio*¸ No. 15-2132, 2016 WL 3219874, at *9 (D.N.J. June 6, 2016) (citing *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011)).

After analyzing the record in the light of these standards, this Court is not persuaded that the statements by Mr. Gardner were clearly capable of producing an unjust result. This Court's review of the prosecutor's summation as a whole satisfies it that there was nothing so egregious as to deprive defendant of a fair trial. *Parker*, 132 S. Ct. at 2153; *Darden*, 477 U.S. at 181; *Donnelly*, 416 U.S. at 643. None of the comments challenged by Petitioner "infected the trial with unfairness." Rather, the prosecutor was advocating for his position and identifying flaws in the defense's case, including pre-DNA report and post-DNA report discrepancies in Petitioner's recollection of whether or not he was present in J.L.'s apartment the night of the assault. While Petitioner takes issue with the choices made by the prosecutor during his summation, looking at the trial as a whole, none of the statements rendered the resulting conviction a denial of due process.

Second, Petitioner's Prejudicial Statements Claim lacks merit because he has not shown how the state court's purported "persistent [] reference to who caused those injuries to the child in support of his decisions to deny PCR" (D.E. 1 at 24) violated a constitutional right. *Massey II* denied PCR because Petitioner had not satisfied *Strickland*'s deficient performance and prejudice prongs—*not* because of how J.L.'s child might have sustained injuries found on him post-assault by a pediatric physician. (D.E. No. 1-6 at 9-15). Rather, *Massey II* only discussed the injuries in

the context of whether Mr. Bowman's performance was deficient under *Strickland* by entering into the Stipulation:

> So Counsel had a choice, live testimony from objective witnesses with no interest in the case as to objective, visible findings that would consume at a minimum half an hour with a jury focused exclusively upon injuries to a two year old child attributed to his client, or the alternative would have been a 15 second reading of one paragraph detailing those injuries. By stipulating to this evidence, Counsel attempted to minimize the jury's focus upon a fact that could cause the jury to seriously question the consensual sex defense. In short, the jury could ask if the sex was consensual, how did the two year old wind up with all those injuries? That clearly wasn't something Counsel wanted indelibly etched in the jurors' minds.

(*Id*. at 13). Furthermore, Petitioner has offered no facts or argument demonstrating that *Massey IV*'s determination of the "absurdity" of Petitioner's explanation of events on the night in question[22] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In sum, the Post-DNA Claim and Prejudicial Statements Claim do not warrant granting Petitioner habeas relief.

_NERA Challenge_: Petitioner also contends in Ground Seven of the Petition that "the NERA application is in violation of petitioner's Federal Constitutional Rights, depriving the defendant of a fair trial, impartial jury and due process of law." (D.E. No. 1 at 35).

At sentencing, the trial judge merged the sexual assault, aggravated criminal sexual contact, and criminal sexual contact convictions into the first degree aggravated sexual assault conviction, and sentenced Petitioner to a 20-year term of imprisonment, with an eighty-five percent parole

---

[22] "Acceptance of this second version of events would require the jury to ignore the fact that during this incident, the victim's two year old child was physically assaulted and required medical attention. That hardly fits within the parameters of any conventional understanding of consensual sex. Any reasoned evaluation of Defendant's version would reveal its absurdity." (D.E. No. 20-27 at 12).

disqualifier pursuant to NERA. The judge imposed a concurrent 10-year period of imprisonment, with a NERA eighty-five percent parole disqualifier, on the second-degree armed burglary conviction, and a concurrent five-year term, with a two and one-half year parole disqualifier, on the third-degree criminal restraint conviction. The trial judge merged the terroristic threats and weapon convictions into the first-degree armed robbery conviction, and sentenced Petitioner to a 15-year term of imprisonment, with a NERA eighty-five percent parole disqualifier, to run consecutive to the other sentences. The aggregate term of imprisonment was 35-five years with an eighty-five percent term of parole ineligibility. (D.E. No. 1-7 at 4-5).

As noted above, Massey appealed his conviction and the Appellate Division affirmed in *Massey I*. (D.E. No. 1-4). The New Jersey Supreme Court denied his petition for certification. (D.E. No. 16-4).

For the following reasons, Petitioner has not shown any violation of the United States Constitution, laws, or treaties with respect to his NERA-based claim, which must be denied for this reason.

NERA expressly applies to convictions for sexual assault, aggravated sexual assault, and burglary such as Petitioner's. *See* N.J. Stat. Ann. § 2C:43–7.2(d)(4), (7), and (12). Petitioner has not pointed to any constitutional violation occasioned by this state law. To the extent he suggests that an extended term with limited opportunity for parole constitutes an Eighth Amendment violation for cruel and unusual punishment, courts have consistently reject that argument. *See, e.g., United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011); *United States v. Walker*, 473 F.3d 71, 83 (3d Cir. 2007); *State v. Johnson*, 166 N.J. 523, 766 A.2d 1126, 1140–41 (2001) (holding that New Jersey's NERA statute does not constitute cruel and unusual punishment). To the extent Petitioner is challenging the state courts' application of state law, he may not do so on habeas

review. *See Chapman v. United States,* 500 U.S. 453, 465 (1991) ("[A] person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.").

Furthermore, "[s]entencing is generally considered a matter of state criminal procedure, which does not fall within the purview of federal habeas review." *Vreeland v. Warren*, No. 11-5239, 2013 WL 1867043, at *17 (D.N.J. May 2, 2013); *see also Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (sentencing "is a matter of state criminal procedure and it does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus"); *Grecco*, 661 F. Supp. at 415. "Federal courts are thus limited on habeas review of a petitioner's sentence to the question of whether the prisoner's sentence exceeds the relevant statutory limits." *Reddick v. Warren*, No., 2016 WL 29261, at *13 (D.N.J. Jan. 4, 2016) (citing *Vreeland*, 2013 WL 1867043, at *17). Here, the sentencing Petitioner received was within the statutory limits for the relevant crimes under state law[23], and Petitioner does not assert otherwise. (*See* D.E. No. 20-23 at 7-8[24]). Petitioner's claims regarding his sentence do not present meritorious habeas claims. *Vreeland*, 2013 WL 1867043 at *17.

Petitioner also asserts in Ground Seven of the Petition that the "elements needed to convict the [P]etitioner beyond a reasonable doubt was [sic] not established and was [sic] not found by a fact finding jury." (D.E. No. 1 at 35). This argument is wholly without merit.

---

[23]    N.J. Stat. Ann. §§ 2C:12-3b, 2C:13-2, 2C:14-2a, 2C:14-2c, 2C:14-3a, 2C:14-3b, 2C:18-2, 2C:39-4d, 2C: 2C:43-7.2, and 2C:15-1.

[24]    "Mr. Bowman: We're not in a position to raise cogent opposition to that [application of NERA], Your Honor." (D.E. No. 20-23 at 7-8).

Proof of a criminal charge beyond a reasonable doubt is constitutionally required. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068 (1970). Due process requires that no individual be deprived of their freedom "unless the jurors who try him are able, upon their consciences, to say that the evidence before them . . . is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged." *Davis, supra,* 160 U.S. at 493, 16 S.Ct. at 360. Moreover, the reasonable doubt standard provides "concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." *In re Winship, supra,* 397 U.S. at 363, 90 S.Ct. at 1072, (quoting *Coffin v. United States,* 156 U.S. 432, 15 S.Ct. 394, 403 (1895)).

In this case, the record indicates that the trial judge clearly—and repeatedly—instructed jurors on the reasonable doubt standard and its application to the elements of the charged offenses. (D.E. No. 20-19 at 5-6). The appropriate inquiry here does not require this Court to ask "whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, *Woodby v. INS,* 385 U.S. 276, 282, 87 S.Ct. 483, 486 (1966), but rather, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson, supra,* 443 U.S. at 320, 99 S.Ct. at 2789. Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

A review of the record demonstrates sufficient evidence against Petitioner in support of his conviction. At trial, the jury was given the opportunity to evaluate the credibility of Petitioner's testimony (D.E. No. 1-4 at 7-9), and compare its inconsistencies with that of the victim, who was cross-examined extensively by defense counsel. (D.E. Nos. 20-1 at 11-35, 20-2 at 1-35, 20-3 at 1-

25, and 20-4 at 1-35). The jury also heard evidence from Edward J. La Rue, a forensic scientist with the New Jersey State Police and supervisor of its DNA analysis unit, that Petitioner's "blood control is an exact match" with the sperm sample obtained post-assault from J.L. at the hospital. (D.E. No. 1-4 at 4). Defense counsel offered character evidence of Petitioner's reputation for truth and veracity, endeavoring to support Petitioner's testimony that sex between the victim and Petitioner on July 22, 1998 was consensual. (D.E. No. 20-18 at 4). Weighing the credibility of all this evidence was properly a task left to the jury—who did so here and concluded that Petitioner was guilty. It is solely within a jury's province to accord the testimony of witnesses their places in the ultimate verdict, and this is not a matter susceptible to review in a federal habeas corpus proceeding. *See United States ex rel. Petillo v. State of New Jersey,* 562 F.2d 903, 907 (3d 1977). Petitioner presents no reason for the Court to disturb the jury's finding here. As *Massey IV* observed:

> The evidence presented by the Defense in this matter, even supplemented with Laderman's testimony would raise no more than a possible doubt as to the Defendant's guilt. A reasonable jury hearing this case would, as the jury here did, find this Defendant guilty beyond a reasonable doubt.

(D.E. No. 20-27 at 19).

After carefully examining the entire record, this Court is satisfied that any rational trier of fact could indeed have found Petitioner guilty of the essential elements of the crimes beyond a reasonable doubt. The record reflects that the trial court did in fact specifically stress to the jurors, again and again, that the State must prove beyond a reasonable doubt each element of each offense. (D.E. Nos. 20-19 at 5-6 and 17-35; 20-20 at 1-15). Thus, because the trial court did not lift the burden of proof on any essential element of any offenses charged, Petitioner has failed to show that he is entitled to relief on this claim. As this Court is not empowered to sit in substitution of a

state trier of fact, nor has it found the verdict to be insufficient as a matter of constitutional law, habeas relief is denied on this claim as well. In sum, Petitioner's NERA-application and excessive sentencing challenges in Ground Seven fail on the merits.

### D. __Ground Five: Cumulative Effect Of Errors__

In Ground Five, Petitioner claims that the "cumulative effects of the errors complained of and the deficient trial counsel prejudiced and rendered the trial unfair and deprived the Petitioner of Due Process." (D.E. No. 1 at 26).

In support of his claim, Petitioner relies upon allegations concerning: (1) the Laderman IAC Claim, (2) the Stipulation Claim, (3) the Substantive Jury Instruction Claim, (4) the Post-DNA Claim, (5) the Prejudicial Statements Claim, and (6) allegations of prosecutorial misconduct in cross-examination and in summation by reference to the Stipulation (referred to as "Misconduct Claim") (these six claims are collectively referred to as "Cumulative Errors Argued On PCR"). (D.E. Nos. 1 at 26-27; 17-1 at 4-6; 17-8 at 2-3; and 17-9 at 19-20).

In support of Ground Five, Petitioner also relies upon: (1) claims of a Brady violation by the prosecutor in not informing Petitioner of exculpatory evidence (referred to as "Brady Claim"); and (2) IAC for failing to argue against NERA and for not arguing in support of appropriate mitigating factors at sentencing (referred to as "NERA/Sentencing-IAC Claim") (these two claims are collectively referred to as "Cumulative Errors Alleged On Habeas"). (*Id.*).

For reasons explained below, the Cumulative Errors Argued On PCR Claim and the Cumulative Errors Alleged On Habeas Claim are denied on the merits.

"The cumulative error doctrine allows a petitioner to present a stand-alone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528,

542 (3d Cir. 2014). "Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process." *Id*. (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)). The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Hein v. Sullivan,* 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly,* 416 U.S. at 643; *see also Fahy v. Horn,* 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

The PCR appellate court adjudicated the Cumulative Errors Argued On PCR (despite possible procedural bar under New Jersey Rule of Court 3:22-4 (D.E. No. 17-1 at 4-6; D.E. No. 17-8 at 2-3; D.E. No. 17-9 at 19-20)) and found no merit to any of them. (D.E. 18-12 at 9-12 and 14 (*Massey III* court's finding of lack of merit to Petitioner's challenges to use of Stipulation at trial, albeit under IAC analysis of his claim, and ruling the balance of PCR issues raised by Petitioner "are without merit")); as such, there are no meritorious grounds for habeas relief based upon alleged accumulation of errors that did not exist. *See*, *e.g.*, *Muniz v. Powell*, No. 13-178, 2015 WL 511618, at *15 (D.N.J. Feb. 6, 2015); *Stewart v. United States*, No. 12-346, 2014 WL 3573395, at *12 (D.N.J. July 21, 2014).

This Court also rejects the Cumulative Errors Alleged On Habeas Claim. This claim appears unexhausted. Nevertheless, it is without merit. First, as to the unexhausted *Brady* Claim that Petitioner has raised for the first time on habeas, a *Brady* claim has three elements: (1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the

defense. *Moore v. Illinois*, 408 U.S. 786 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963). Here, the Petition does not set forth the required elements, since Petitioner merely alleged "a *possible* Brady violation by prosecutor" as to Laderman's "exculpatory evidence testimony." (D.E. No. 1 at 27, 29, 31, and 32 (emphasis added)). Petitioner has not specified how Laderman's testimony was, in fact, exculpatory. Consequently, habeas relief must be denied on this ground. Second, as to the unexhausted NERA/Sentencing-IAC Claim, wherein Petitioner argues ineffective assistance for counsel's failure to argue against NERA and in support of appropriate mitigating factors (D.E. No. 1 at 26), "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. Petitioner has not demonstrated either that trial counsel's strategic decision as to NERA and mitigating factors was deficient, or that such counsel prejudiced Petitioner. Under *Strickland*, both are requisite elements for assertion of IAC claims on habeas review.

For all of these reasons, this Court denies habeas relief as to all of Ground Five's claims for Cumulative Errors Argued On PCR and Cumulative Errors Alleged On Habeas. There is no merit to Petitioner's exhausted and unexhausted claims for individual errors. As such, there is no basis for habeas relief based upon an alleged accumulation of errors that does not exist.

### E.  Ground Six: Assertion of Innocence and Request for Evidentiary Hearing

In Ground Six, Petitioner "maintains his innocence and the interests of justice mandate a full evidentiary hearing on all issues raised in the habeas corpus petition." (D.E. No. 1 at 29, 26). In support of his actual innocence claim, Petitioner relies upon allegations of IAC regarding failure to investigate and use of Laderman as a witness, various alleged "erroneous[] [determinations]" by the PCR court, and purported Brady violation by prosecutor. (*Id*. at 30-31).

*Assertion of actual innocence*: Because habeas petitions that are filed pro se are to be construed liberally, the Court will allow Petitioner to raise actual innocence as a defense for the first time in the Petition. *See Hubbard v. Pinchak*, 378 F.3d 333, 337-38 (3d Cir. 2004) (holding that actual innocence can be raised in a traverse when using the "more forgiving lens" of a *pro se* petition (citing *United States v. Garth*, 188 F.3d 99, 108 (3d Cir. 1999))). Even after making such an allowance, however, the Petition must be denied as without merit.

A claim of "actual innocence" relates to innocence in fact, not innocence based on a legal, procedural defect. A litigant must present evidence of innocence so compelling that it undermines a court's confidence in the trial's outcome of conviction, thus permitting him to argue the merits of his claim. A claim of actual innocence requires a petitioner to show: (a) new reliable evidence not available for presentation at the time of the challenged trial; and (b) that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. *See House v. Bell,* 547 U.S. 518 (2006); *Schlup v. Delo,* 513 U.S. 298, 324, 327 (1995). Furthermore, the *House* Court emphasized that the gateway standard for habeas review in claims asserting actual innocence is extremely demanding and permits review only in the "extraordinary" case. *House,* 547 U.S. at 536–37 (citing *Schlup,* 513 U.S. at 327).

In this case, Petitioner has not presented any evidence that undermines this Court's confidence in his conviction. Petitioner's claim of "actual innocence" is not based on any new evidence suggesting "innocence in fact." Absent demonstration of new reliable evidence of his factual innocence, Petitioner cannot show that it is more likely than not that no reasonable juror would have convicted him. *See House v. Bell,* 547 U.S. 518, 537 (2006); *Schlup v. Delo,* 513 U.S. 298, 324, 327 (1995). Furthermore, Petitioner has failed to demonstrate circumstances that would render § 2254 an inadequate or ineffective remedy; nor does he represent an intervening change in

the law that renders non-criminal the crime for which he was convicted. Petitioner also fails to demonstrate any circumstances amounting to a "complete miscarriage of justice." Consequently, Petitioner is not entitled to relief on his "actual innocence" claim.

*Request for evidentiary hearing*: Petitioner has not alleged any facts that, if proved, would entitle him to relief on any grounds set forth in his Petition. Thus, an evidentiary hearing is not necessary to establish the truth of any allegations pertinent to its disposition. Furthermore, it is worth noting that when a claim has been adjudicated on the merits in state court, federal habeas review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) (habeas courts' review is confined to the record that was before the state court on petitioners' exhausted claims). Petitioner having failed to make the threshold proffer necessary for relief, his hearing request does not merit further written discussion and is denied. *See Zettlemoyer*, 923 F.2d at 298 n.2; *Mayberry v. Petsock,* 821 F.2d 179 (3d Cir.), *cert. denied,* 315 484 U.S. 946 (1987).

## VI.     CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional, the habeas petition is inadequate to deserve encouragement to proceed further. A certificate of appealability is denied.

## VII. <u>CONCLUSION</u>

For the reasons expressed in this Opinion, the Court DENIES the § 2254 Petition for habeas

relief and DENIES a certificate of appealability. An appropriate Order follows.

*s/Esther Salas*

**Esther Salas, U.S.D.J.**
